IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY D. EDWARDS,

    Plaintiff,        No. CIV S- 04-1164 FCD GGH P

    vs.

DEPARTMENT OF CORRECTIONS, et al.,       ORDER &

    Defendants.        FINDINGS AND RECOMMENDATIONS

_____/

Introduction

    Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court are: 1) defendant Rohrer's December 13, 2005, motion for summary judgment; and 2) plaintiff's motion to compel discovery, filed on January 3, 2006.

Complaint

    This matter proceeds on plaintiff's June 18, 2004, complaint, as modified by the February 3, 2005, Order, adopting the Findings and Recommendations, filed on December 15, 2004, wherein all defendants,[1] except Rohrer, were dismissed from this action.  Plaintiff alleges that defendant Dr. Jason A. Rohrer failed to provide him with a brace that he needs due to nerve

---

[1] California Department of Corrections, [Warden] Tom L. Carey, and [Chief Medical Officer] Alvara C. Traquina were dismissed as defendants.

1

1  damage, partial paralysis and arm and hand mobility impairment from which he suffers since
2  having sustained a gunshot wound to his elbow. Complaint, p. 3. Plaintiff suffers from
3  "peripheral neuropathy of the ulnar nerve of my right upper extremity." Id. Plaintiff's
4  impairment causes a "claw hand deformity." Id. Plaintiff states that he was seen by defendant
5  Rohrer on June 30, 2003, as a new arrival, at which time he expressed concern about not having
6  his brace, as it had been "left behind for repair" and its whereabouts were unknown. Id.
7  Defendant Rohrer referred plaintiff to the Orthotics Clinic. Id. On September 3, 2003 (or
8  simply, September, 2003), plaintiff was seen by a Mr. Birvey Plecker, Solano, Ortho and
9  Prosthesis (Plecker is not named as a defendant). Id. Plecker took plaintiff's hand, finger and
10 wrist measurements for an extension that would aid in straightening plaintiff's fingers. Id.

11          During the "month or so" plaintiff had to wait for the (arm) brace, plaintiff saw
12 defendant Rohrer several times, during which times they spoke about what was taking so long for
13 plaintiff's brace to be made. Complaint, p. 3. On each occasion, defendant Rohrer "made calls
14 to find out what was going on." Id. On one occasion, defendant Rohrer filled out another order
15 for plaintiff to be seen. Complaint, pp. 3-4. On another occasion, defendant Rohrer said he
16 would look into the delay. Complaint, p. 4. In January, 2004, a Dr. Solomon (not named as a
17 defendant), told plaintiff that the "prosthesis person" had quit. Id. Plaintiff filled out a Form
18 1824, complaining of pain and suffering he was being caused. Id. Plaintiff could have been
19 taken to an outside clinic in accordance with the prison's rules but the prison refused. Id.
20 Plaintiff was told in March that there would be a contract with another specialist. Id. As of June
21 18, 2004, however, plaintiff still did not have the prosthetic device he needed for his condition.
22 Id.

23          Plaintiff seeks to implicate defendants (most of whom have been previously
24 dismissed) for failure to comply with prison regulations regarding the maintenance of contractual
25 arrangements with local off-site agencies for medically necessary services, as well as alleging
26 deliberate indifference on the part of the defendants (of whom only defendant Rohrer remains as

a party). Complaint, p. 4. Plaintiff claims to have suffered "irreversible" damage from not having the brace. Id. Plaintiff seeks only money damages.

Motion to Compel

A scheduling order issued in this action on July 15, 2005. The discovery deadline was set for October 21, 2005, and the order stated explicitly: "[a]ny motions necessary to compel discovery shall be filed by that date." See Scheduling Order, filed on 7/15/05, p. 5. Plaintiff brought the instant motion to compel production of documents in a motion date-stamped by the Clerk of the Court as having been filed on January 3, 2006. Even by application of the mailbox rule, whereby the motion is deemed to have been filed on December 28, 2005,[2] plaintiff's motion is untimely by more than two months.[3] Plaintiff did not seek an extension of time to file a motion beyond the discovery cut-off, nor did plaintiff provide any reply when defendants asserted the untimeliness of the motion as part of their opposition.[4]

In addition, the motion is otherwise defective in that plaintiff does not reproduce the precise requests he made to the defendant and does not reproduce the responses which he finds objectionable, saying only the defendants have objected on the ground that the requests were burdensome. Motion to Compel (MTC), pp. 1-2. Plaintiff initially filed his requests with the court on September 28, 2005, at the time when they were not at issue and at a point when

---

[2] See Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988); Koch v. Ricketts, 68 F.3d 1191 (9th Cir. 1995)

[3] The court previously noted the untimeliness of plaintiff's motion to compel in granting plaintiff a thirty-day extension of time to file his opposition to the motion for summary judgment. See Order, filed on January 13, 2006.

[4] While defendant's objection to plaintiff's motion to compel on grounds of untimeliness is well-taken, that plaintiff did not make a good faith effort to confer with defendant before bringing the motion, pursuant to Fed. R. 37(a)(2)(A), is not a proper basis for opposition in this prisoner civil rights action. The court's April 8, 2005, Discovery Order plainly states: "unless otherwise ordered, Local Rule 37-251 shall not apply."

they should have simply been served, although belatedly, upon defendant.[5]  A comparison of those requests with the requests he has submitted as part of his motion to compel production of documents indicates that plaintiff has added a request not served upon defendant and has modified another of the requests.  This is confirmed by a declaration of defendant's counsel, who submits a copy of the requests he received, file-stamped September 28, 2005.  See Opposition to MTC and Stanzler Declaration (Dec.).  Accordingly, plaintiff's motion to compel discovery will be denied as untimely and otherwise defective.

Motion for Summary Judgment

    Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

---

[5] The court observes that by waiting to serve the requests until September 28, 2005, plaintiff simply did not leave himself enough time to file any motion to compel discovery, since the parties had 45 days to serve any response, pursuant to the April 8, 2005, Discovery Order, and the deadline for completion of discovery, including the filing of any motion to compel discovery, elapsed on October 21, 2005.  Further, the Scheduling Order required that discovery requests be served no later than sixty days prior to the discovery cut-off date.  See Scheduling Order, p. 5.  (Even application of the mailbox rule, which would date the requests as having been filed, rather than served, on September 24, 2005, does not help plaintiff).

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

1  56(e) advisory committee's note on 1963 amendments).

2  In resolving the summary judgment motion, the court examines the pleadings,
3  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
4  any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
5  477 U.S. at 255, 106 S. Ct. at 2513. All reasonable inferences that may be drawn from the facts
6  placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S.
7  at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the
8  opposing party's obligation to produce a factual predicate from which the inference may be
9  drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
10 aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing
11 party "must do more than simply show that there is some metaphysical doubt as to the material
12 facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the
13 nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct.
14 1356 (citation omitted).

15 On January 5, 2005, the court advised plaintiff of the requirements for opposing a
16 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154
17 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.
18 Eikenberry, 849 F.2d 409 (9th Cir. 1988).

19 Legal Standard for Eighth Amendment Claim

20 In order to state a § 1983 claim for violation of the Eighth Amendment based on
21 inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence
22 deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.
23 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively
24 serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter,
25 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.
26 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference."

Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense––a subjective standard–– disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at

1  1981.  However, obviousness per se will not impart knowledge as a matter of law.

2          Also significant to the analysis is the well established principle that mere
3  differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth
4  Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,
5  662 F.2d 1337, 1344 (9th Cir. 1981).

6          Moreover, a physician need not fail to treat an inmate altogether in order to violate
7  that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.
8  1989).  A failure to competently treat a serious medical condition, even if some treatment is
9  prescribed, may constitute deliberate indifference in a particular case.  Id.

10         Additionally, mere delay in medical treatment without more is insufficient to state
11  a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766
12  F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is
13  no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing
14  Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-
15  1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends
16  to provide additional support for a claim of deliberate indifference; however, it does not end the
17  inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the
18  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those
19  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of
20  the defendant."  McGuckin, 974 F.2d at 1061.

21         Superimposed on these Eighth Amendment standards is the fact that in cases
22  involving complex medical issues where plaintiff contests the type of treatment he received,
23  expert opinion will almost always be necessary to establish the necessary level of deliberate
24  indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there
25  may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the
26  treatment he received equated with deliberate indifference thereby creating a material issue of

fact, summary judgment should be entered for defendants. The dispositive question on this summary judgment motion is ultimately <u>not</u> what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.

Discussion

Defendants move for summary judgment on the grounds that there is no genuine issue as to any material fact; defendant is entitled to summary judgment as a matter of law; and defendant is entitled to qualified immunity.[6] Motion for Summary Judgment (MSJ), p. 1.

The following facts are undisputed: defendant Dr. Rohrer is the Chief Physician and Surgeon at California State Prison (CSP)- Solano. Defendant's Separate Statement of Undisputed Material Facts (DSSUMF) # 1. Defendant Rohrer saw plaintiff at CSP-Solano as a new arrival on June 30, 2003. DSSUMF # 2. Plaintiff was seen for a gunshot wound injury received in 1991 that left his right hand and arm paralyzed. DSSUMF # 3. The atrophy of the muscles and shortening of the tendons in plaintiff's hand produced a contracture deformite that is sometimes referred to as a claw hand deformity. DSSUMF # 4. Plaintiff had been wearing a right forearm brace which had been lost upon arrival to the prison. DSSUMF # 5. Plaintiff was given an 1845 form to document his disability and was given a 128-C chrono which specified restricted light duty, low bunk housing, and permission to possess and wear his right arm brace. DSSUMF # 6. Defendant initiated a request for plaintiff to be seen in the orthotics clinic. DSSUMF # 7. Plaintiff was seen by defendant and Dr. Thor on September 18, 2003, at which time it was noted that plaintiff's arm brace had been found or replaced and that he had seen orthotics for pad and hand splints. DSSUMF # 8. On September 24, 2003, the orthotics clinic noted that plaintiff was supplied with two elbow pads to be used with his underarm orthotic; the arm brace, elbow pads, and underarm support provided support for plaintiff's partial paralysis of

---

[6] As to this last ground, defendant makes no actual argument in his motion papers for his entitlement to qualified immunity, therefore this putative ground must be disregarded.

the arm. DSSUMF # 9. Defendant saw plaintiff on February 21, 2004 in response to plaintiff's Request for Reasonable Modification of Accommodation (Form CDC 1824), wherein he alleged a disability, requesting the finger extension splint recommended by the orthotics clinic due to curling and contractures of his fingers secondary to paresis. Defendant was informed by a staff member that the finger extension splint would be (further) delayed because the contract with the orthotocist had expired and a new contract had yet to be completed. The estimated new date for the new contract, which was pending, was March, 2004, of which plaintiff was informed. DSSUMF # 10.

On April 19, 2004, plaintiff was seen by the orthotics clinic for a hand orthotics fitting, whereupon it was determined that another type of orthotics was needed and would be supplied as soon as possible by the orthoticist. DSSUMF # 11. Plaintiff was seen in follow-up on May 13, 2004, by the orthotics clinic and supplied with a knuckle bender hand splint to which the outrigger did not work to extend the fingers as plaintiff wanted. The orthotics clinic suggested using individual safety pin splints to extend the last two digits at the next visit. A finger extension splint helps straighten the fingers to reduce the tendency towards curling (or contracture) of the fingers of a paralyzed hand. While this splint was a recommendation by the orthoticist, plaintiff did not possess such a device prior to transfer to CSP-Solano. DSSUMF #'s 12-13.

On August 12, 2004, plaintiff was again seen in the orthotics clinic but did not bring his knuckle bender splint which was needed to add finger extension pads, which delayed the addition of the extension pads that the orthoticist wished to add. Plaintiff was rescheduled for that purpose to be seen at the next orthotics clinic. Plaintiff was seen again on September 14, 2004, at which time the hand splint outrigger and finger loops were provided to deal with plaintiff's finger contractures. DSSUMF #'s 14-15. Plaintiff complains that there was a delay in providing him the device recommended by the orthotics clinic (the finger extension splint) due to the fact that the contract with the orthoticist has expired. DSSUMF # 17.

1  As to DSSUMF # 16, plaintiff disputes that what he complains about is the month
2  or so delay in the return of his arm brace which could not be located when plaintiff first arrived at
3  CSP-Solano.  Opp., p. 1.  As to DSSUMF # 18, wherein it is stated that defendant does not
4  believe that the short time plaintiff went without his arm brace and the "short delay" plaintiff
5  experienced in receiving his finger extension splint, affected plaintiff in any significant manner,
6  plaintiff cannot dispute that the defendant believes that, but he does contend, at least as to the
7  delay with respect to receiving the finger extension splint that it was a short period of time or that
8  he was not significantly impacted by the delay.  Plaintiff asserts that he went without the (hand)
9  brace and finger extension splint from June 30, 2003 until May 13, 2004, conceding that his arm
10 brace was restored to him in September of 2003.  As to DSUMFF # 19, while plaintiff appears to
11 tacitly concede that defendant was not personally responsible for the one or two month delay in
12 having his arm brace returned to him, he does dispute defendant's contention that defendant had
13 nothing personally to do with plaintiff's having failed to receive the finger extension splint, and
14 again argues that the delay in his receiving the splint was only a short period of time.

15  Finally, as to DSSUMF # 20, plaintiff concedes within the allegations of his
16 complaint that defendant made inquiries on his behalf to expedite the return of plaintiff's arm
17 brace, and that defendant tried to determine the reason for the delay in his obtaining the hand
18 brace and finger extension splint.  However, it is plaintiff's argument that it was defendant's
19 responsibility as his attending or treating physician to see to it that he received the finger
20 extension splint in a more expeditious manner.  Opp., p. 2.  Plaintiff contends that defendant
21 \\\\\
22 \\\\\
23 \\\\\
24 \\\\\
25 \\\\\
26 \\\\\

could have taken steps, pursuant to CAL. CODE REGS. tit.xv, § 3350.2 (a)[7] and (b),[8] to secure the requisite services and to thereby limit or eliminate the delay to which he was subjected, arising from what plaintiff characterizes as a "contract dispute," opp., pp. 1-2, but which period of time defendant describes as being between the expiration of one contract and the completion and initiation of a new contract. Rohrer Dec., ¶ 10.

Defendant relies on his sworn declaration in his own defense, attaching no medical records in support of his recitation of the events at issue. Plaintiff provides a number of exhibits including, attached to his complaint, a Reasonable Modification or Accommodation Request Form, signed and stamped received on 2/2/04, wherein plaintiff complains that he has been approved to receive "finger braces" for six months, which has not been forthcoming, and that the pain in his fingers is sometimes "like a [sic] electrical shock"; he refers in his attachment to the form to having seen the defendant in October, 2003, November, 2003, December, 2003, and January, 2004, at which times both he and the defendant unavailingly sought the reason for the delay, and complaining that the delay has caused him increased damage, muscle deterioration and pain. Defendant Rohrer's first level appeal response, partially granting plaintiff's request for the approved hand brace, states that an inquiry was conducted and that "[t]he completion of your splint has been delayed pending approval of a new contract between the State of California and

\\\\\

\\\\\

---

[7] "Each facility shall maintain contractual arrangements with local off-site agencies for those health services deemed to be medically necessary as defined in section 3350(b)(1), and that are not provided within the facility. Such services may include medical, surgical, laboratory, radiological, dental, and other specialized services likely to be required for an inmate's health care."  Section 3350(b)(1) provides the following definition: "Medically Necessary means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care."

[8] "When medically necessary services are not available for an inmate within a facility, the facility's chief medical or dental officer may request the institution head's approval to temporarily place that inmate in a community medical facility for such services."

the orthotic provider. The estimated/tentative date for contract approval is March 2004."[9] In the second level appeal response, dated March 26, 2004, and signed by (former defendant) Dr. Traquina, the appeal was again partially granted. Therein, it was recognized that plaintiff had a disability under the Armstrong Remedial Plan. The appeal response includes the following: "The completion of your splint has been delayed pending approval of a new contract between the State of California and the orthotics provider. The contract has been approved and it is expected that you will receive your finger extension splint as soon as available." The May 6, 2004, third level appeal denial echoes the second level appeal response and partial grant, indicating that plaintiff had not yet obtained, but would receive, the hand brace "as soon as available."

        Plaintiff has attached exhibits to his opposition filed on January 31, 2006, and has sought leave to file supplemental exhibits, on March 27, 2006, averring that he, apparently only recently, reviewed his medical records file. Plaintiff seeks to set forth "newly discovered evidence" within the supplemental exhibits. He states that as of June 15, 2005, Dr. Daniel Thor (not a defendant) made a request that plaintiff be seen by an orthotic specialist at the University of California, San Francisco, and that from December 8, 2005, through January and February of 2006, plaintiff was seen and fitted for a new arm brace and hand splint by a Matthew Garibaldi, CPO, of the Orthotic and Prosthetic Center at UCSF. See Motion re: Supplemental Exhibits, filed 3/27/06. Defendant filed no reply to plaintiff's opposition, and, although the supplemental filing is belated, filed no objection to plaintiff's request to supplement his exhibits. Under the circumstances, the court will allow plaintiff to supplement his exhibits to his opposition, to the extent that the exhibits are apropos.

        The problem, however, for plaintiff in both sets of exhibits is that he has included medical records that are not properly authenticated. Fed. R. Civ. P. 56(e) provides in relevant part that,

---

[9] Plaintiff also included a copy of defendant's first level appeal response among his supplemental exhibits filed on March 27, 2006.

> Supporting...affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith...

"It is well established that unauthenticated documents cannot be considered on a motion for summary judgment." Hal Roach Studios v. Feiner, 896 F.2d 1524, 1550 (9th Cir. 1989). "To be considered by the court 'documents must be authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'" Id., quoting Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987). "A document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary judgment." Id..

The court may not consider unauthenticated medical records in evaluating plaintiff's opposition to defendant's motion. King v. Aliyeh, 814 F.2d 565, 567 (9th Cir. 1987) (pro se litigants must follow the same rules of procedure that govern other litigants). Moreover, this court is not in a position to interpret medical tests or diagnoses, even if the documents were properly authenticated. On the other hand, the court will consider the copy of the letter, dated March 6, 2006, included in the supplemental 3/27/06 filing, addressed to Dr. Traquina and signed by Matthew Garibaldi, CPO, of the Orthotic and Prosthetic Center at the University of California, San Francisco. The letter states in relevant part:

> Upon an evaluation of his previous elbow orthoses, it was apparent that the device did not deem adequate for his needs; i.e., it was much too heavy, ill fitting, and poorly designed. As a result, the patient was able only to achieve minimal function from the device. Also, the ulnar neuropathy presentation of the right hand was not addressed with any type of splint, which made it difficult for him to grasp objects.
>
> He has since been fit with the proper elbow and hand orthoses. The fit and function of both devices deem more than adequate at this time, and the patient is quite satisfied with the results.

\\\\\

1   It is unclear from the letter when the more satisfactory fit occurred, although
2   plaintiff attempts to flesh this out by his reference to being fitted from December 2005, through
3   February, 2006. However, what is at issue in plaintiff's allegations is the period of time from
4   June 30, 2003, or September of 2003, until May of 2004, a period of eleven (from June '03 to
5   May '04) or eight months (September '03 to May '04), during which period plaintiff complains
6   that he did not receive the hand brace.[10] As to that period of time, from the end of June, 2003,
7   until some time before September 18, 2003, by which point as noted in the undisputed facts, it
8   was determined that plaintiff had previously received the arm brace missing upon his arrival at
9   CSP-Solano, the court has little difficulty in determining that defendant is entitled to summary
10  judgment. This is because as to any delay in plaintiff's receipt of the arm brace plaintiff himself
11  concedes within the allegations of the complaint that defendant Rohrer made multiple efforts to
12  locate the arm brace and the delay at issue was at most a period of time slightly in excess of two
13  months.
14  There is some difficulty in dating the delay in plaintiff's receipt of the hand brace
15  with finger extensions because while the defendant apparently initiated a request on June 30,
16  2003, for plaintiff to be seen in the orthotics clinic, it is unclear by defendant's showing as to
17  when that first occurred. Rohrer Dec., ¶ 7. Defendant merely states that when he saw plaintiff
18  on September 18, 2003, that, inter alia, plaintiff had been seen in orthotics for pad and hand

---

[10] Although plaintiff alleges in his complaint that as of the date of filing his action in June of 2004, he had yet to receive his hand brace and finger extension splint, and defendant himself appears to indicate that it was not until September 2004 ( a year after plaintiff was apparently first measured in the CSP-Solano orthotics clinic for the splint), that plaintiff was finally provided with the hand splint outrigger and finger loops to deal with plaintiff's finger contractures (see DSSUMF # 15, Rohrer Dec., ¶ 15), both parties aver that plaintiff did receive a hand splint on May 13, 2004. Plaintiff states in his opposition, which supersedes the allegations of his complaint: "In fact the plaintiff went without his brace and finger extension splint from 6-30-03 to 5-13-04, in between this time plaintiff's arm brace was found and return [sic] to him in September of 03." Opp., p. 1. While the court finds that the initial date plaintiff cites herein refers to the temporary loss of the arm brace and not to the hand brace for which plaintiff was not even measured until September of 2003, the undersigned find that the parties agree that plaintiff first received the hand brace in May of 2004, notwithstanding the allegations of the complaint.

splints, but does not date plaintiff's visit to the orthotics clinic. Rohrer Dec., ¶ 8. However, within his complaint, plaintiff states that he was seen by someone named Birvey Plecker in Ortho and Prosthesis in September of 2003. Complaint, p. 3. Plecker took plaintiff's hand, finger and wrist measurements for an extension to aid in the straightening of plaintiff's fingers. Id. The next date defendant notes is a September 24, 2003, orthotics clinic notation that plaintiff had been supplied with two elbow pads. Because plaintiff has affirmatively stated that the measurements were taken for his hand brace and finger extension splint, and therefore implicitly approved by orthotics, in September 2003, the court will find that the approval arose in September, 2003, rather than on June 30, 2003, which signifies a delay, from September of 2003 to May 2004, of some eight months between the measurement and recommendation or approval of the hand brace until plaintiff's actual receipt of the hand brace with finger extensions.

The question then becomes whether such a delay constitutes deliberate indifference to a serious medical condition. According to the only expert to weigh in on the matter, defendant himself, the delay was short, plaintiff was not thereby injured and, in any event, he (defendant) was not responsible for the delay, for all of which reasons defendant is entitled to summary judgment. To the extent that the letter plaintiff submits from the CPO at the UCSF Orthotic and Prosthetic Center constitutes expert evidence on plaintiff's behalf, while it would appear that the previous arm brace, and apparently the hand brace with finger extension splint, received in May 2004 and adjusted up through September 2004, may not have been optimally designed and may have been unwieldy, uncomfortable and not wholly adequate, limiting plaintiff's ability to grasp, the "new right elbow and hand orthoses" referred to does not appear to be directly related to the gravamen of the complaint because what is at issue therein is the delay before he received the finger extension orthotics in May 2004, and not any alleged deficiencies thereof, thus the reference to the need for yet another device which is referenced in a letter almost two years later does not appear to be directly relevant.

\\\\\

Plaintiff has adequately set forth that there was a delay, and has cited state regulations under which defendant might have been able to accelerate his receipt of the hand extension orthotics plaintiff did not receive until May of 2004. However, the delay to which plaintiff was subjected does not appear to have occurred due to deliberate indifference on the part of defendant. In plaintiff's complaint, plaintiff's attaches his own appeal whereby he notes that during the months of October, November, December of 2003 and January of 2004, defendant made efforts to discover the reason for the delay plaintiff was subjected to in not receiving the finger orthotics. Plaintiff includes defendant's appeal response indicating the reason for the delay.

Although the delay due to the expiration of one prison contract and the initiation of another undoubtedly caused plaintiff discomfort, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d at 408. It is not enough for plaintiff to cite to prison regulations which may or may not have been applicable in this context to show defendant's deliberate indifference. Nor does a letter dated March of 2006, signify how plaintiff's not having received a device for an eight month period, from September 2003 until May of 2004, constituted deliberate indifference on defendant's part to a serious medical condition.

Plaintiff has not been able to demonstrate that he was seriously harmed, in a physical sense, by the defendant's action or inaction. McGuckin, 974 F.2d at 1060. Plaintiff has not demonstrated that defendant Rohrer purposefully failed to respond to plaintiff's need for a hand brace and finger extension, nor has he demonstrated how prison regulations would have afforded plaintiff the opportunity he sought to obtain his splint sooner or how the failure to comply with prison regulations, even if that occurred, could in this case constitute deliberate indifference. Plaintiff has shown that he was inconvenienced by the expiration of one prison contract and the implementation of another and is persuasive that he was subjected to some pain and discomfort by the delay in receiving his hand brace and finger extension splint (a device

which, itself, evidently has since been improved upon), but that does not constitute of itself in this case the level of deliberate indifference on the part of the defendant, even assuming defendant could have circumvented the prison's contracting procedures, requisite to rise to a violation of plaintiff's rights under the Eighth Amendment.

This case illustrates the deficiencies, at times, of a § 1983 lawsuit instituted in federal court. The gravamen of plaintiff's complaint, and he has a legitimate complaint, is systemic. The remaining individual defendant could not rectify this systemic defect. The regulation cited by plaintiff does not permit individual physicians to contract with outside services for prosthetic devices. Rather, as was the case here, the institution and CDCR as a whole must make those arrangements. However, when one sues in federal court under § 1983, state entities may not be sued for damages. The court will not permit individuals to simply become proxy defendants for a state system which may have failed in its dealings with plaintiff.

Accordingly, IT IS ORDERED that plaintiff's January 3, 2006, motion to compel discovery, deemed to have been filed on December 28, 2005, is denied as untimely and otherwise defective.

IT IS HEREBY RECOMMENDED that defendant Rohrer's December 13, 2005, motion for summary judgment be granted and judgment be entered for defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections

\\\\\
\\\\\
\\\\\
\\\\\

1  within the specified time may waive the right to appeal the District Court's order.  Martinez v.
2  Ylst, 951 F.2d 1153 (9th Cir. 1991).
3  DATED:  8/7/06                                          /s/ Gregory G. Hollows

                                                          GREGORY G. HOLLOWS
                                                          UNITED STATES MAGISTRATE JUDGE

GGH:009
edwa1164.ofr